UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| PAMELA A. BAUGHER, | NO. 4:17-CV-5190-TOR |
|---|---|
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| WASHINGTON STATE UNIVERSITY, | |
| Defendant. | |

BEFORE THE COURT is Plaintiff Pamela Baugher's Motion for Summary Judgment (ECF No. 8) and Defendant Washington State University's Motion to Dismiss and, in the alternative, Motion for Summary Judgment (ECF No. 17). Pamela Baugher filed the Motion for Summary Judgment (ECF No. 8) on November 20, 2017, just three days after filing this suit. *See* ECF Nos. 1; 8. After extending the deadline to respond, ECF No. 16, Defendant Washington State University (WSU) filed its response and corresponding Motion to Dismiss and

Motion for Summary Judgment on December 20, 2017. ECF No. 12. Plaintiff has not filed a response to Defendant's Motion. The matters were submitted without oral argument. For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss and, accordingly, DENIES Plaintiff's Motion for Summary Judgment and DENIES AS MOOT Defendant's Motion for Summary Judgment.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); citations omitted; brackets in original). Accordingly, to survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the complaint, the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). When deciding, the Court may consider the plaintiff's allegations and any "documents incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted).

Where a plaintiff is proceeding *pro se*, the allegations must be viewed under a less stringent standard than allegations of plaintiffs represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). While the court can liberally construe a *pro se* plaintiff's complaint, it cannot supply an essential fact that the plaintiff has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

## BACKGROUND[1]

The instant action arises out of the death of Shep, Plaintiff Pamela Baugher's beloved dog. According to Plaintiff, WSU refused to provide a potentially life-saving procedure for Shep because Plaintiff did not have the cash up-front to pay for the services, as is required for services at the WSU Veterinary Teaching Hospital. *See* ECF Nos. 3; 8. Plaintiff explains that – although she had the funds available in her account – she was unable to withdraw the needed cash without

---

[1] The following facts are construed in the light most favorable to Ms. Baugher.

having to travel hundreds of miles to her bank, which – as she alleges – she could not do because of a disability. ECF No. 8 at 4. She thus asserts a claim against Defendant WSU under the American with Disabilities Act and Rehabilitation Act for failing to reasonably accommodate[2] Plaintiff's inability to pay cash up-front.[3]

---

[2] "Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,'" as used in the Rehabilitation Act, although the "terms create identical standards" and the Ninth Circuit has a "practice of using these terms interchangeably." *McGary v. City of Portland*, 386 F.3d 1259, 1266, n.3 (9th Cir. 2004) (citation omitted). The Court will follow this practice.

[3] Plaintiff also asserts that WSU put out an alert on her for animal abuse, ECF No 3 at 2, and that WSU was hunting her down to force the killing of Shep, ECF No. 8 at 2, 4. However, Plaintiff has not specifically alleged a tort – or any other – cause of action based on this alleged conduct. *See* ECF No. 1-1. Even if the Court were to construe Plaintiff's Amended Complaint as alleging a tort action, said action would be jurisdictionally barred because Plaintiff has not alleged she filed a claim with the State Office of Financial Management, as is a prerequisite for filing a tort claim against the state. *Schoonover v. State*, 116 Wash. App. 171, 177, 64 P.3d 677, 680 (2003) (citing RCW 4.92.100).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS;
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

# GOVERNING LAW

The issue before the Court is whether WSU violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Rehabilitation Act), and Section 202 of Title II of the American with Disabilities Act of 1990 (ADA). Both the Rehabilitation Act and the ADA prohibit discrimination against the disabled by entities receiving federal funds and public entities, respectively. 29 U.S.C. § 794; 42 U.S.C. § 12132; *Bonner v. Lewis*, 857 F.2d 559, 561 (9th Cir. 1988); *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014); *Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1047 (9th Cir. 2009). Title II of the ADA "was expressly modeled after § 504 of the Rehabilitation Act." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001), and the Ninth Circuit has held "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act," so "courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Cal.,* 166 F.3d 1041, 1045 n.11 (9th Cir. 1999). However, the Ninth Circuit has clarified that "there are material differences between the statutes as a whole." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013).

To succeed on either claim, the plaintiff must first show that a policy or other action "discriminates *on the basis of disability*." *Weinreich v. Los Angeles*

*Cty. Metro. Transp. Auth.*, 114 F.3d 976, 979 (9th Cir. 1997) (emphasis in original). Stated another way, a policy or other government action discriminates on the basis of disability when it (1) denies the disabled "meaningful access" to a service (2) due to his or her disability. *Id.*; *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010); *Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers."); *Washington v. Indiana High Sch. Athletic Assoc.*, 181 F.3d 840, 848 (7th Cir. 1999). Once a plaintiff is denied meaningful access due to his or her disability "[t]he duty to provide 'reasonable accommodations' under the ADA and the Rehabilitation Act arises[,]" *Weinreich*, 114 F.3d at 979:

> When a state's policies, practices or procedures discriminate against the disabled in violation of the ADA, Department of Justice regulations require reasonable modifications in such policies, practices or procedures "when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."

*Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996) (quoting 28 C.F.R. § 35.130(b)(7))). "Reasonableness 'depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to [enjoy meaningful access to the program.]'" *Mark H. v. Hamamoto*, 620 F.3d at 1098

(brackets in original; quoting *Vinson v. Thomas,* 288 F.3d 1145, 1154 (9th Cir. 2002)).

To establish a denial of meaningful access, a plaintiff is not required to show they are "completely prevented from enjoying a service, program, or activity." *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) ("If the Courthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the trial is 'readily accessible,' regardless whether the disabled person manages in some fashion to attend the trial."). "Difficulty in accessing a benefit, however, does not by itself establish a lack of meaningful access." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1329 (N.D. Ga. 2017); *see Bircoli v. Miami-Dade County*, 480 F.3d 1072, 1087-88 (11th Cir. 2007) (deaf motorist not denied benefit of effective communication with officer, even though communication was difficult due to a hearing impairment) and *Ganstine v. Sec'y, Fla. Dep't of Corr.*, 502 Fed.Appx 905, 910 (11th Cir. 2012) (inmate had meaningful access to the prison facilities even though his disability prevented him from *always* accessing certain areas in the prison in his wheelchair). Put in different terms, a disabled person is denied "meaningful access" when a policy imposes an "undue burden" on the disabled. *See Cohen*, 754 F.3d at 700.

The degree of connection for establishing the causal element varies between the Rehabilitation Act and the ADA—Plaintiff must show she was "denied those services 'by reason of' (for the ADA claim) or 'solely because of' (for the Rehabilitation Act claim) her disability." *Martin*, 560 F.3d at 1048. The "causal standard for the Rehabilitation Act is even stricter" than that of the ADA. *Id.* Neither standard requires the discrimination be intentional or facial discrimination, as the protections have been broadly applied to "protect disabled persons from discrimination arising out of both discriminatory animus and 'thoughtlessness,' 'indifference,' or 'benign neglect.'" *Crowder*, 81 F.3d at 1484 (quoting *Choate*, 469 U.S. at 295); Choate, 469 U.S. at 299 ("While we reject the boundless notion that all disparate-impact showings constitute prima facie cases under § 504, we assume without deciding that § 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped"); *Cohen*, 754 F.3d at 700 ("Even facially neutral government actions that apply equally to disabled and nondisabled persons may violate Title II if the public entity has failed to make reasonable accommodations to avoid unduly burdening disabled persons."). Rather, a plaintiff can demonstrate a policy denied services "by reason of" his or her disability when the policy "treat[s] disabled [persons] differently or create[s] disproportionate burdens *because of the nature of their limitations* or even their status as individuals with disabilities." *Brown v. City of Los Angeles*, 521 F.3d

1238, 1242 (9th Cir. 2008) (emphasis own). Some circuit courts employ a "but for" test to determine whether a service was denied "by reason of" his or her disability. *See*, *e.g.*, *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007).

## DISCUSSION

The Court finds that, taking Plaintiff's factual allegations as true, Plaintiff complaint does not survive Defendant's Motion to Dismiss (ECF No. 17). Even assuming Plaintiff has a disability within the meaning of the ADA and Rehabilitation Act, Plaintiff's account of the events does not demonstrate she was denied meaningful access due to her disability.

First, Plaintiff was denied services because her "financial circumstances" prevented her from being eligible for the services, not "by reason of" or "solely because of" her alleged disability. *Weinreich*, 114 F.3d at 979. While Plaintiff attempts to link her disability, her inability to drive, and her banking situation to WSU's ultimate denial of services, the connection is too tenuous. It was her particular financial situation – having a distant bank and not otherwise having enough cash on hand – that prevented her from accessing WSU services.

Second, even if the Court were to find that, "but for" Plaintiff's disability, she would have had access to the services, the Court cannot find that Plaintiff was denied meaningful access to WSU's veterinary services. Importantly, Plaintiff was

able to secure such services before under the same, cash up-front policy. Even when she was "denied" services, she still had access to the services if she otherwise secured the cash needed. Further, while Plaintiff complains she did not have access to her own private transportation because of her disability, Plaintiff could have arranged other means of transportation to travel to her bank. *See Hassan v. Slater*, 41 F. Supp. 2d 343, 350 (E.D.N.Y.), *aff'd*, 199 F.3d 1322 (2d Cir. 1999) (decision to close railway station did not violate ADA – even though the closing made it more difficult for the plaintiff to travel – since plaintiff could use alternate stations or modes of transportation). This puts Plaintiff in the same position as others who may have difficulty paying for veterinary services in cash up-front because of financial or travel restrictions.

If Plaintiff's position were adopted, Title II and the Rehabilitation Act would be without bounds, as every cash up-front policy – or any other policy that imposes *some burden* on the disabled – would potentially violate the prohibitions against discrimination. This is inconsistent with the somewhat heightened standard requiring an *undue burden* or denial of *meaningful access*, *see Cohen*, 754 F.3d at 700, as opposed to a mere "[d]ifficulty in accessing a benefit[,]" *Todd*, 236 F. Supp. 3d at 1329. *See Bircoli v. Miami-Dade County*, 480 F.3d at 1087-88; *Ganstine*, 502 Fed.Appx at 910. Indeed, if Plaintiff's position were adopted, the ADA's reach would extend to any public service offered that requires one to drive

to the location to secure the service. This would also lead to "the boundless notion" rejected by the Supreme Court "that all disparate-impact showings constitute prima facie cases" of discrimination. Choate, 469 U.S. at 299.

Ultimately, the WSU cash up-front policy did not deny Plaintiff meaningful access to their services, and Plaintiff's alleged exclusion "was not due to [her] medical disability, but rather to [her] inability to satisfy a condition of eligibility because of [her] financial circumstances." *Weinreich*, 114 F.3d at 979. This is not a case where the "requirement effectively prevents [a person with a disability] from enjoying the benefits of state services"; rather, Plaintiff was able to access the services until she had a personal banking issue. *See Crowder*, 81 F.3d at 1481 (quarantine requirement effectively precluded visually-impaired individuals who relies on guide dogs to enjoy benefits of state services and activities in violation of the ADA). Nor is this a case where some physical or other impediment effectively limits the disabled from readily accessing services in a way particular to the disability. *See Shotz*, 256 F.3d at 1080; *see also Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1013–14 (9th Cir. 2017). Quite the contrary—the policy only imposes a minor burden that has no real connection to a disability; there is no undue burden placed on Plaintiff and the policy does not otherwise have an "unjustifiable disparate impact upon the handicapped[.]" Choate, 469 U.S. at 299. As a result, Plaintiff's has failed to state a claim.

## OPPORTUNITY TO AMEND / VOLUNTARILY DISMISS COMPLAINT

Unless it is absolutely clear that amendment would be futile, a *pro se* litigant must be given the opportunity to amend the complaint to correct any deficiencies. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded by statute on other grounds,* 28 U.S.C. § 1915(e)(2), *as stated in Aktar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc).

Plaintiff's claims for discrimination under the Rehabilitation Act and ADA do not appear to be viable, even with additional allegations of fact. Out of an abundance of caution, the Court will allow Plaintiff to file a Second Amended Complaint, if buttressed by further factual allegations that could potentially state a viable cause of action.

Plaintiff may submit a Second Amended Complaint within **sixty (60) days** of the date of this Order which must include sufficient facts to establish a plausible claim against Defendant WSU. *See Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citations omitted). To do so, Plaintiff must provide specific information addressing all the deficiencies noted above.

**PLAINTIFF IS CAUTIONED IF SHE FAILS TO AMEND WITHIN 60 DAYS AS DIRECTED, THE COURT WILL DISMISS THE CAUSES OF ACTION**

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss (ECF No. 17) is **GRANTED**. Plaintiff is free to file an amended complaint within **sixty (60) days** from the entry of this Order.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED AS MOOT**.

3. Plaintiff's Motion for Summary Judgment (ECF No. 8) is **DENIED**.

The District Court Executive is directed to enter this Order, and furnish copies to counsel.

**DATED** March 30, 2018.



THOMAS O. RICE
Chief United States District Judge